UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOHN DOE,

                              Plaintiff,                          1:20-cv-01359 (BKS/CFH)

v.

RENSSELAER POLYTECHNIC INSTITUTE,

                              Defendant.
_____

**Appearances:**

*For Plaintiff*:
Julie A. Nociolo
Benjamin F. Neidl
James C. Knox
E. Stewart Jones Hacker Murphy LLP
28 Second Street
Troy, NY 12180

*For Defendant*:
Michael E. Ginsberg
Rhiannon I. Spencer
Pattison, Sampson, Ginsberg & Griffin, PLLC
22 First Street—P.O. Box 208
Troy, NY 12181

**Hon. Brenda K. Sannes, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I.    INTRODUCTION

On November 3, 2020, Plaintiff John Doe, a student at Defendant Rensselaer Polytechnic Institute ("RPI"), filed this diversity action against RPI alleging breach of contract and breach of the implied covenant of good faith and fair dealing. (Dkt. No. 1, at 16–21). The same day, Plaintiff filed a motion under Federal Rule of Civil Procedure 65 for a temporary restraining order ("TRO") and preliminary injunction enjoining RPI "from imposing an 'Emergency

Suspension' upon the plaintiff, and excluding him from participating in his coursework via online learning, pending the conclusion of the plaintiff's judicial inquiry at the college." (Dkt. No. 1; Dkt. No. 5, at 1).[1] On November 5, 2020, the Court held a telephone conference with the parties and provided RPI until 5:00 p.m. to file a response to Plaintiff's request for a TRO based on his claim regarding the emergency suspension. The Court also gave the same deadline for the Plaintiff to file any supplemental briefing in support of his motion. Having considered the parties' submissions, (Dkt. Nos. 11, 12), the Court grants Plaintiff's motion for a TRO to the extent it seeks to enjoin RPI from excluding him from participating in his coursework via online learning pending the outcome of the judicial inquiry.

## II. BACKGROUND[2]

### A. RPI's Response to the COVID-19 Pandemic

In March 2020, during the initial COVID-19 outbreak, RPI, a private university in Troy, New York, took precautionary measures and shut down all in-person course instruction for the duration of the Spring 2020 Semester. (Dkt. No. 12, at 2). RPI is now the defendant in two damages class action lawsuits brought by students, which allege that RPI diminished the educational value of its programming by cancelling on-campus instruction. (*Id.*).

After spending the duration of the Spring 2020 Semester and the Summer of 2020 revising applicable policies and procedures to account for the ongoing pandemic, the RPI administration determined that the implementation of such new protocols would allow it to begin the Fall 2020 Semester with on-campus living, instruction, and events. (*Id.*). As a prerequisite for

---

[1] Plaintiff also filed a motion to proceed under a pseudonym and seal exhibits attached to the complaint, which is pending. (Dkt. No. 3). To the extent Plaintiff seeks to seal information that is set forth in this decision, the motion is denied because Plaintiff has failed to meet the standard for sealing set forth in *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006). A separate order will issue shortly.
[2] The facts set forth herein are drawn from the Complaint, as well as the exhibits submitted by both parties in connection with Plaintiffs' motion for a TRO and preliminary injunction. (Dkt. Nos. 1, 5, 11, 12).

enrolling in RPI in the Fall 2020 Semester, all RPI students were required to read and acknowledge by signature their willingness to comply with the "Agreement to Comply With Health & Safety Requirements For Students Attending the Rensselaer Campus and Activities" (the "HSR").[3] (Dkt. No. 1, ¶ 12; Dkt. No. 1-6, at 2–3). RPI intended the HSR to impress upon RPI students the serious nature of the COVID-19 pandemic and to implore them to take it seriously. (Dkt. No. 12, at 2).

The HSR provides that "[t]hese requirements supplement the [RPI] Handbook of Student Rights and Responsibilities" and states that: "The health and safety of students and other persons on the [RPI] campus are of paramount importance. In light of the global COVID-19 pandemic, [RPI] is implementing requirements and restrictions designed to enhance the safety of our on-campus community during this crisis." (Dkt. No. 1-6, at 2). It contains a list of directives applicable to "[a]ll [RPI] students . . . participating in person in any [RPI]-sponsored activities," regarding, among other things, testing, social distancing, providing contact information, and use of personal protective equipment. (*Id.* at 2–3). It states that "[b]ecause compliance with these health and safety requirements is a critical condition for on-campus attendance and participation in campus activities during the pandemic, students who fail to comply may be required to immediately leave campus and resume coursework online." (*Id.* at 2). It further states "[r]epeated, intentional, or egregious acts of non-compliance shall be considered Grounds for Disciplinary Action (GDA), which *may include suspension or expulsion*." (*Id.* (emphasis added)). Lastly, the HSR reiterated that students acknowledged and agreed to "[comply] with all applicable government orders, directives, regulations and laws." (*Id.* at 3).

---

[3] Plaintiff signed the HSR on July 31, 2020. (Dkt. No. 12-1, at 1–2).

3

The 2020 RPI Handbook of Student Rights and Responsibilities (the "Handbook") "lays out both the rights and the responsibilities of students at [RPI] to help ensure mutual respect, integrity, and an environment where all students can effectively pursue their educational goals." (Dkt. No. 1-1, at 4). It states that "[a]ll [RPI] students are expected to comply with the rules and regulations set forth in the Handbook, as well as with the requirements set forth in other [RPI] policies and rules." (*Id.*). The Handbook contains the following "Community Health Emergencies Statement":

> The health and safety of students and other persons on the [RPI] campus are of paramount importance. During periods of community health emergencies, [RPI] may implement requirements and restrictions designed to enhance the safety of our on-campus community during crises. Requirements may include, but are not limited to, mandatory testing and immunization, social distancing and use of personal protective equipment (PPE), reporting for tracking and tracing purposes, reduction of on-campus activities and visitors, self-quarantine or isolation directives, and de-densification standards.
>
> Responsibility for compliance with these requirements rests with all students attending the [RPI] campus or any events or locations where [RPI] activities occur. Because compliance with health and safety requirements are a critical condition for on-campus attendance and participation in campus activities during a community health emergency, *students who fail to comply may be required to immediately leave campus and resume coursework online*; and student organizations may face disciplinary action which may result in the interim suspension of activities, disciplinary suspension, or expulsion. *Repeated or intentional non-compliance shall be considered Grounds for Disciplinary Action (GDA) which may include suspension or expulsion*.

(*Id.*) (emphasis added).

Article VII ("Procedural Standards in Disciplinary Proceedings"), states that "[p]enalties shall be imposed or assessed under prescribed procedures." (*Id.* at 7). Section E of that article allows "emergency suspension pending the hearing and determination [of charges], *when the*

4

*continued presence of such student could constitute a danger to the safety of a person or property on the premises*" of RPI. (*Id.* at 8) (emphasis added). It further provides that "[i]n the event of such a suspension, the student, upon written request, shall have the right to a hearing before the appropriate [RPI] judiciary within five institute business days after said request." (*Id.*).

B.  **Plaintiff John Doe**

Plaintiff has provided a declaration with the following facts. He has been a student at RPI since Fall 2017, and is enrolled in the five-year "Eng MBA" program; if he completes that program, he "will earn a Bachelor of Science Degree in engineering and a Master of Business Administration Degree." (Dkt. No. 5-1, ¶¶ 5–6). Plaintiff is "scheduled to complete the undergraduate part of this program" at the end of this semester, in December 2020. (*Id.* ¶ 6). Plaintiff's "family has paid RPI [his] entire tuition for this semester." (*Id.* ¶ 8).

During this semester, Plaintiff has resided off-campus in a private house approximately one mile from RPI's campus, with three roommates. (*Id.* ¶ 10). Plaintiff has been taking all of his RPI courses this semester online. (*Id.* ¶ 11). Plaintiff is "the captain of an RPI athletic team," and "[a]s part of [his] participation in that team," he has "been tested for COVID-19 twice per week during the semester," "all of which have yielded negative results." (*Id.* ¶ 12).

According to Plaintiff, on the evening of Friday, October 9, 2020, Plaintiff "invited some friends"—"only a few people"—to his "off-campus house to watch a basketball game on television." (Dkt. No. 5-1, ¶ 14). "A number of other people also came to [Plaintiff's] house that night which was more than [he] invited or expected" but Plaintiff "was preoccupied with the basketball game and was not really interacting with the others." (*Id.* ¶ 14).

Near the end of the basketball game, "an officer from the City of Troy Police Department and an officer from the RPI Public Safety Department ("Public Safety") approached" Plaintiff's

5

house, and the police officer informed Plaintiff "that he was responding to a noise complaint." (*Id.* ¶ 17). The RPI Public Safety Officer asked for, and Plaintiff provided, his student ID number. (*Id.* ¶¶ 21, 23).

On October 12, 2020, Public Safety issued a report regarding the incident at Plaintiff's residence. (Dkt. No. 12-2). It indicates that Public Safety "received a noise complaint" regarding Plaintiff's residence and that, when the Public Safety Officer and the Troy Police Officer responded, "they observed a large gathering of around 75 people at the residence."[4] (*Id.*). The Officers advised Plaintiff "to shut the party down." (*Id.*). The Public Safety Officer issued a "G[rounds for D[isciplinary] A[ction] for failure to comply with [RPI's] COVID-19 guidelines" and notified the Dean who was on call. (*Id.*). According to RPI, "due to the nature of the alleged egregious, intentional, and reckless behavior of hosting a social gathering where it was reported that 75 individuals were in attendance, RPI determined that such reckless disregard for the health and safety of the RPI and Troy communities, warranted placing Plaintiff on 'Emergency Suspension' while the investigation into the alleged conduct proceeded." (Dkt. No. 12, at 4).

On Monday, October 12, 2020, Plaintiff "received an email letter from Travis Apgar, RPI's Assistant Vice President for Student Life," advising Plaintiff that he had "violated the terms described in [RPI's] Health and Safety Agreement, and the Community Health Emergencies Statement detailed in the [RPI] Handbook for Student Rights and Responsibilities." (Dkt. No. 5-1, ¶ 24; Dkt. No. 1-2, at 2). Apgar wrote:

> Law enforcement received a call pertaining to your residence for a noise violation. Upon responding to your residence, law enforcement documented that you hosted a large gathering with a documented number of approximately 75 individuals, with suspected alcohol presence and use. These behaviors created a

---

[4] The parties dispute the number of individuals present at Plaintiff's residence. (Dkt. No. 12, at 4–5 (noting that Plaintiff told RPI administrators that he believed 30–35 individuals had been present)).

> dangerous environment, by increasing the risk of exposure to the COVID-19 virus for your fellow students, [RPI] staff, as well as law enforcement personnel who responded to the call. . . .
>
> Your actions, as reported, seriously jeopardize [RPI's efforts to operate amid the pandemic], and are in violation of the Community Health Emergencies protocols detailed in the [RPI] handbook.

(Dkt. No. 1-2, at 2). Citing the "emergency suspension" provision of the Handbook, Apgar advised Plaintiff that: "Given the seriousness of your actions as reported, effective immediately, you have been placed on an Emergency Suspension from [RPI], pending the outcome of a Judicial Inquiry." (*Id.*). Apgar informed Plaintiff that as part of this suspension: "All access to campus is to be terminated, including access to online academic classes and academic related activities." (*Id.* at 3). Apgar explained that:

> A social gathering of students not following [RPI] established health and safety protocols poses a serious threat to those who attended the gathering, as well as those that they come into contact with. The COVID-19 virus has claimed hundreds of thousands of lives over the course of the last several months. Your actions as reported qualify as conduct which may result in egregious harm to others within the [RPI] community.

(*Id.* at 3–4).[5]

In a letter to Plaintiff dated October 14, 2020, John Lawler, Dean of Student Living and Learning, wrote:

> Public Safety reported your involvement in an incident that occurred on October 10, 2020 to the Dean of Students Office. The report included information that may constitute a violation(s) of RPI's Grounds for Disciplinary Action. As a result of the information reported, this matter has been referred to the Judicial Process for review.

---

[5] In an October 16, 2020 letter to RPI students and families regarding the gathering at issue, Apgar noted that "those who have been identified as having been involved, or possibly involved, have had their campus access revoked." (Dkt. No. 1-4, at 3).

(Dkt. No. 1-3, at 2). Lawler advised that "[t]he reported Grounds for Disciplinary Action are:" (1) "Failure to Comply"; and (2) "Alcohol Policy Violation," as defined in Grounds for Disciplinary Action #15 and #17, respectively, in the Handbook.[6] (*Id.*). Lawler explained that Plaintiff's "responsibility for the reported violations has not been determined," and that the matter had been referred to a "Judicial Inquiry" with Lawler. (*Id.*).

On October 20, 2020, Lawler sent Plaintiff a second letter advising Plaintiff that there were three additional "reported Grounds for Disciplinary Action violations" and further explaining the first two grounds. (Dkt. No. 1-5, at 2–3). As to "Failure to Comply," Lawler wrote that Plaintiff allegedly failed:

> to comply with the Community Health Agreement and the Community Health Emergencies Statement included in the [RPI] Handbook for Student Rights and Responsibilities which describes the terms of student responsibility to abide by all health and safety protocols, policies, and directives implemented by [RPI] to prevent the spread of COVID-19, including, but not limited to social distancing of at least six-feet, wearing face masks, and limiting social gatherings to 10 people or less.

(*Id.* at 3). As to "Alcohol Policy Violation," Lawler wrote that it had become "apparent that alcohol was likely presence at the residence during the time of the social gathering" and that the "gathering, as reported, includes a large quantity of individuals, of various ages and affiliations, who may have had access to alcohol at the residence." (*Id.*). The three additional grounds were: (1) "Conduct which endangers the Safety of the [RPI] Community"; (2) "Violations of the Law," citing to New York State Executive Orders; and (3) "Violations of the Law," in violation of

---

[6] Ground #15 prohibits: "Failure to comply with an [RPI] official in the performance of their duties, including but not limited to, failure to provide valid identification or knowingly furnishing false identification." (Dkt. No. 1-1, at 10). Ground #17 prohibits: "Conduct which violates [RPI] or student government regulations established in a specific area or department by those having jurisdiction over it including, but not limited to: Parking, Public Safety, Residence Life, Financial Aid, Health Services." (*Id.*).

8

Grounds for Disciplinary Action # 13, and #1 in the Handbook.[7] (*Id.*). Lawler explained that "[t]he violations, as alleged, seriously jeopardize the health and safety of the [RPI] community" as well as RPI's efforts to prevent the spread of COVID-19. (*Id.*). As to the alleged violations of the law, Lawler explained that Plaintiff allegedly violated the Governor of New York's Executive Orders prohibiting social gatherings of more than 50 individuals and requiring the use of masks where individuals are unable to social distance. (*Id.*). Lawler advised that Plaintiff's Judicial Inquiry was scheduled for 1:00 p.m. on October 23, 2020 via Webex. (*Id.*).

Plaintiff "was interviewed by the hearing officer on October 26, 2020, but the hearing officer has not rendered a decision on whether there are Grounds for Disciplinary Action."[8] (Dkt. No. 5-1, ¶ 26). Plaintiff, his parents, and his attorney "have . . . asked officials at RPI if [Plaintiff] can be restored to [his] online courses while this matter is pending, and RPI has refused." (*Id.* ¶ 25). "[T]his is supposed to be [Plaintiff's] final undergraduate semester," and as of November 2, 2020, "there are only thirty days of class instruction left" in the semester. (*Id.* ¶ 28). In addition, Plaintiff has been prevented from "carrying [his] ends of [group] projects," increasing the "burden to [his] classmates." (*Id.*, ¶ 30). Plaintiff does "not know whether [he] will be able to complete [his] undergraduate study by the end of this semester as planned" and is "worried that this will affect [his] eligibility to be graded for the courses" or place him "at risk of

---

[7] Ground #13 prohibits: "Conduct which endangers the safety of the [RPI] community." (Dkt. No. 1-1, at 10). Ground # 1 prohibits: "Conduct which could be construed to be a violation of any federal, state, or local law." (*Id.*).
[8] According to RPI's "Student Rights and Responsibilities Information Guide," following a report to the Dean of Students Office, the "Disciplinary Process" begins with a meeting between the student and hearing officer for a "judicial inquiry," during which the student may provide evidence or information to the hearing officer, and during which the hearing officer reviews the complaint, information in support of the complaint, and possible sanctions. (Dkt. No. 1-5, at 6). If the hearing officer determines "there is enough information to hold a student accountable for a violation of the [RPI] Handbook," the student will be charged, and the disciplinary process will continue, and if there is not enough information, the matter will be closed. (*Id.*). There is no timeframe specified for the Hearing Officer's determination following the Judicial Inquiry.

having an impaired performance because of the loss of the instruction from [his] professors." (*Id.* ¶ 29).

### III. STANDARD OF REVIEW

Rule 65 of the Federal Rules of Civil Procedure governs temporary restraining orders and preliminary injunctions. In the Second Circuit, the standard for issuance of a temporary restraining order is the same as the standard for a preliminary injunction. *Fairfield Cty. Med. Ass'n v. United Healthcare of New Eng.*, 985 F. Supp. 2d 262, 270 (D. Conn. 2013), *aff'd*, 557 F. App'x 53 (2d Cir. 2014); *AFA Dispensing Grp. B.V. v. Anheuser-Busch, Inc.*, 740 F. Supp. 2d 465, 471 (S.D.N.Y. 2010) ("It is well established that the standard for an entry of a temporary restraining order is the same as for a preliminary injunction."). "A party seeking a preliminary injunction must show (1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest." *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018).

Generally, preliminary injunctions are prohibitory or mandatory. *Id.* at 36. "Prohibitory injunctions maintain the status quo pending resolution of the case; mandatory injunctions alter it." *Id.* The "status quo . . . is, 'the last actual, peaceable uncontested status which preceded the pending controversy.'" *Id.* at 37 (quoting *Mastrio v. Sebelius*, 768 F.3d 116, 120 (2d Cir. 2014) (per curiam)). A party seeking a mandatory injunction "must meet a heightened legal standard by showing 'a clear or substantial likelihood of success on the merits.'" *Id.* (quoting *N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2012).

Here, the injunctive relief Plaintiff seeks is prohibitory. The TRO Plaintiff requests would maintain "the last actual, peaceable uncontested status": Plaintiff attending classes online before

suspension. *See Doe v. Vassar Coll.*, No. 19-cv-9601, 2019 WL 6222918, at *4, 2019 U.S. Dist. LEXIS 203418, at *12 (S.D.N.Y. Nov. 21, 2019) ("In the instant case, it appears that the status quo ante was the moment before Plaintiff's suspension was imposed." (citing *Garcia v. Yonkers Sch. Dist.*, 561 F.3d 97, 107 (2d Cir. 2009) (referring to "preserv[ing] the status quo" as permitting suspended students to continue attending school in the context of a temporary restraining order and preliminary injunction)). Accordingly, Plaintiff must show "either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party." *N. Am. Soccer League*, 883 F.3d at 37.

## IV.  ANALYSIS

### A.  Irreparable Harm

A showing of irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (quoting *Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999)). "Irreparable harm is 'injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages.'" *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 660 (2d Cir. 2015) (quoting *Forest City Daly Hous., Inc. v. Town of North Hempstead*, 175 F.3d 144, 153 (2d Cir. 1999)). "The relevant harm is the harm that (a) occurs to the parties' legal interests and (b) cannot be remedied after a final adjudication, whether by damages or a permanent injunction." *Salinger v. Colting*, 607 F.3d 68, 81 (2d Cir. 2010) (internal footnote omitted).

Here, Plaintiff's final semester has been disrupted by his emergency suspension and he is at risk of being unable to complete the final semester of undergraduate work, or having to repeat it. In *Doe v. Vassar College*, the district court noted that, although the Second Circuit has held

11

that the harms that result in a delay in graduation can adequately be remedied by damages, "[w]hether an interruption in coursework is irreparable harm is a closer question, which the Second Circuit has not squarely addressed, and on which it appears that district courts have disagreed." 2019 WL 6222918, at *6, 2019 U.S. Dist. LEXIS 203418, at *16 (citing *Phillips v. Marsh*, 687 F.2d 620 (2d Cir. 1982) and collecting cases). The Court concludes that Plaintiff's allegations that he will lose the work he completed prior to his mid-semester suspension if he is unable to return is sufficient to show irreparable harm. *Compare Bhandari v. Trustees of Columbia Univ.*, No. 00-cv-1735, 2000 WL 310344, at *5, 2000 U.S. Dist. LEXIS 3720, at *15–16 (S.D.N.Y. Mar. 27, 2000) (finding irreparable harm where the plaintiff was suspended midway through the semester and would lose "the benefit of the work he has already performed this semester"), *with Vassar Coll.*, 2019 WL 6222918, at *6, 2019 U.S. Dist. LEXIS 203418, at *15 (finding no irreparable harm where plaintiff claimed suspension "for a single semester at the *beginning* of his senior year") (emphasis added).

      **B.**    **Likelihood of Success or Serious Questions on the Merits**

To establish a breach of contract claim under New York law, a plaintiff must show: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of the contract by the defendant, and (4) damages." *Habitzreuther v. Cornell Univ.*, No. 14-cv-1229, 2015 WL 5023719, at *5, 2015 U.S. Dist. LEXIS 112209, at *14 (N.D.N.Y. Aug. 25, 2015) (quoting *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004)).

Under New York law, "an implied contract is formed when a university accepts a student for enrollment: if the student complies with the terms prescribed by the university and completes the required courses, the university must award him a degree." *Papelino v. Albany Coll. of*

*Pharmacy of Union Univ.*, 633 F.3d 81, 93 (2d Cir. 2011) (citing *Carr v. St. John's Univ.*, 17 A.D.2d 632, 633 (2d Dep't), *aff'd*, 12 N.Y.2d 802 (1962)). The terms of the implied contract are "contained in the university's bulletins, circulars and regulations made available to the student." *Id.* (quoting *Vought v. Teachers Coll., Columbia Univ.*, 127 A.D.2d 654, 654 (2d Dep't 1987)). "Implicit in the contract is the requirement that the institution 'act in good faith in its dealing with its students.'" *Id.* (quoting *Olsson v. Bd. of Higher Educ.*, 49 N.Y.2d 408, 413–14 (1980)). At the same time, "the student must fulfill [his] end of the bargain by satisfying the university's academic requirements and complying with its procedures." *Id.* (quoting *Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 206 (S.D.N.Y. 1998)). To "state a claim for breach of such a contract, a student must identify 'specifically designated and discrete promises.'" *Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353, 370 (S.D.N.Y. 2016) (quoting *Ward v. New York Univ.*, No. 99-cv-8733, 2000 WL 1448641, at *4, 2000 U.S. Dist. LEXIS 14067, at *11 (S.D.N.Y. Sept. 28, 2000)). "'General policy statements' and 'broad and unspecified procedures and guidelines' will not suffice." *Id.* (quoting *Ward*, 2000 WL 1448641, at *4, 2000 U.S. Dist. LEXIS 14067, at *10); *see also Gally*, 22 F. Supp. 2d at 208 ("[G]eneral promises about ethical standards" that are "subject to neither quantification nor objective evaluation" "are far different from the types of specific promises which have led to valid breach of contract claims against universities.").

In this case, Defendant imposed Plaintiff's "Emergency Suspension" under the Handbook, Article VIII, Procedural Standards in Disciplinary Proceedings, Section E, which requires that penalties be imposed "under prescribed procedures," and further provides that "a student may be placed on an emergency suspension pending the hearing and determination thereof, *when the continued presence of such student could constitute a danger to the safety of person or property on the premises* of [RPI]." (Dkt. No. 1-1, at 8) (emphasis added). Although

13

the Handbook's "Community Health Emergencies Statement" states that "intentional non-compliance shall be considered Grounds for Disciplinary Action (GDA) which may include suspension or expulsion," it does not provide for *emergency* suspension.

RPI argues that while the October 9, 2020 gathering is still being investigated, "Plaintiff himself . . . admitted to having at least 30–35 individuals in his off-campus apartment" and that though it believes the "number is larger," even if the "number of individuals was 30–35 students, a COVID-19 outbreak manifesting from that party could not only have resulted in the complete shutdown of RPI, but could have posed a serious health risk to the RPI community consisting of almost 10,000 individuals." (Dkt. No. 12, at 6–7). With respect to its decision to impose an emergency suspension RPI argues that Plaintiff's presence, even in an online forum, and "access to RPI electronics resources such as email directories" and will appear "to any and all who know of this party as not being sanctioned thereby presenting as a danger as he encourages others that such violations are permissible and without consequences." (Dkt. No. 12, at 7). Plaintiff, on the other hand, argues that the resumption of online coursework does not fall within the plain language of the emergency suspension provision which is permitted when a student's "presence" could constitute a danger to the safety of persons or property "on the premises" of RPI. (Dkt. No. 11, at 3).

While the Court recognizes that RPI's arguments for suspending Plaintiff are, in view of the ongoing pandemic and the seriousness of the alleged conduct, compelling, the Court finds that Plaintiff has shown a likelihood of success, or at least a serious question on the merits, with respect to his breach of contract claim regarding RPI's imposition of an emergency suspension. The HSR states that "intentional, or egregious acts of non-compliance shall be considered Grounds for Disciplinary Action . . . which may include suspension or expulsion." (Dkt. No. 1-6,

at 2). It says nothing, however, of *emergency* suspension; the only immediate sanction identified in the HSR is that violators "may be required to immediately leave campus and resume coursework online." (Dkt. No. 1-6, at 2). The fact that the HSR states that "intentional" or "egregious" acts are "Grounds for Disciplinary Action" would seem to mean that such "intentional" or "egregious" misbehavior invokes the Handbook's regular disciplinary process, rather than the *emergency suspension process*, which may only be invoked in the narrow circumstances where "the continued presence of such student could constitute a danger to the safety of person or property on the premises" of RPI. (*Id.*).

Thus, Plaintiff has shown a likelihood of success, or at least a serious question on the merits with respect to his breach of contract claim, specifically: whether RPI's concern that Plaintiff's online appearance would suggest that "RPI will not take such egregious violations seriously," (Dkt. No. 12, at 7), justified its determination that Plaintiff "could constitute a danger" to the RPI community sufficient to invoke the emergency suspension provision of the Handbook, when by the plain language of the HSR the only immediate consequence for a violation is that a student must "leave campus and resume coursework online." *See Melvin v. Union Coll.*, 195 A.D.2d 447, 448–49 (2d Dep't 1993) (finding a preliminary injunction should have been granted in the plaintiff's action claiming, inter alia, breach of contract, finding "a factual dispute as to whether the [college] conformed to the disciplinary guidelines as set forth in the student handbook" and that the plaintiff had "shown that without an injunction to preserve the status quo a suspension for two semesters will cause her irreparable injury for which monetary compensation is not adequate"); *see also, e.g.*, *Doe v. Middlebury Coll.*, No. 1:15-cv-192, 2015 WL 5488109, at *3, 2015 U.S. Dist. LEXIS 124540, at *11 (D. Vt. Sept. 16, 2015) (applying Vermont law and finding that the plaintiff "demonstrated sufficiently serious questions

going to the merits of his breach of contract claim to make them fair ground for litigation" where he alleged that the college "breached duties it owes Plaintiff by instituting and prosecuting an investigation and adjudication in violation of its policies and procedures.").

### C. Balance of Hardships

"[T]he balance of hardships inquiry asks which of the two parties would suffer most grievously if the preliminary injunction motion were wrongly decided." *Goldman, Sachs & Co. v. Golden Empire Schs. Fin. Auth.*, 922 F. Supp. 2d 435, 444 (S.D.N.Y. 2013) (alteration in original) (quoting *Tradescape.com v. Shivaram*, 77 F. Supp. 2d 408, 411 (S.D.N.Y. 1999)).

Plaintiff is likely to suffer irreparable harm by losing the coursework he has completed and having to repeat the semester if the emergency suspension continues much longer. While the Court is mindful of RPI's "public policy deterrence" concerns, (Dkt. No. 12, at 7), if Plaintiff is unable to continue his coursework, he faces the certainty of losing the work he has already completed and having to repeat it at a later time. Plaintiff has represented that he has been taking all of his classes remotely and does not seek to be permitted on the RPI campus. (Dkt. No. 5-1, ¶ 11). Thus, the Court finds, in light of the minimal nature of Plaintiff's presence in connection with RPI if he is limited to online coursework only while this matter is pending, that the balance of the hardships weighs in Plaintiff's favor.

### D. Public Interest

"The court must ensure that the 'public interest would not be disserved' by the issuance of a preliminary injunction." *Salinger*, 607 F.3d at 80. There is no evidence or argument that the public interest would be disserved by the issuance of this TRO.

### V. CONCLUSION

For these reasons, it is

**ORDERED** that Plaintiffs' motion for a TRO (Dkt. No. 5) is **GRANTED** to the extent it seeks to preclude RPI from excluding Plaintiff from participating in his coursework via online learning; and it is further

**ORDERED** that RPI is restrained from excluding Plaintiff from participating in his coursework via online learning; and it is further

**ORDERED** that this TRO does not otherwise disturb any aspect of RPI's investigation or determination on this matter, or any penalty it might impose, nor does it disturb RPI's prohibition against Plaintiff's presence on campus; and it is further

**ORDERED** that, in accordance with Rule 65(b)(2), this TRO expires upon RPI's determination following the judicial inquiry or within 14 days, whichever is sooner, unless the Court, for good cause, extends the order.

**IT IS SO ORDERED.**

Time: 3:14 PM
Dated: November 6, 2020
       Syracuse, New York

*Brenda K. Sannes*
Brenda K. Sannes
U.S. District Judge